———o———

## J. C. CRAVENS, Appellant, *vs.* GEO. W. MOORE, Respondent.

1. *Practice, civil—Execution sale without personal service or attachment—Effect of.—*A judgment is obtained on an order of publication, without personal service or attachment, sale of land thereunder conveys no title.

2. *Execution sale of pre-emption right.—*A pre-emption claim cannot be sold on execution.

3. *Railroad pre-emption—Assignment of—Acknowledgment.—*In 1870, a railroad pre-emption claim to land could not be acknowledged·before a notary, especially one residing in a different county.

4. *Railroad pre-emption—Absence, not abandonment, when.—*Absence from land for eight years will not be construed as necessarily amounting to an abandonment of a railroad pre-emption claim thereto.

5. *Equity—Bills in—To divest title offer to pay for defendant's outlays, rule as to.* —One invoking the aid of equity to divest a legal title obtained in good faith, should in his bill offer to refund money spent in procuring the title, improvements, etc.

### *Appeal from Lawrence Circuit Court.*

*Cravens, pro se.*

I. Plaintiff's equity is· beyond dispute. The right of the ·pre-emption was regularly and legally transferred to him.

II. The defendant's only claim to the right to purchase ·from the company was void ; 1st. because the judgment on

which it was based was void; 2d. because Titterington's preemption right was not subject to sale, even on a valid execution.

III. The action of respondent in obtaining the legal title from the railroad company was a wilful and positive fraud upon the rights of appellant.

*Wait, Broaddus & Pollard,* for Respondent.

I. Titterington's pre-emption claim constituted no interest in the land.    It was a mere personal privilege, and his leaving the land for eight years, making no claim thereto, and permitting defendant to take possession and make improvements, and occupy under claim of right for over five years, constitutes an abandonment.    (Bray vs. Ragsdale, 53 Mo., 170.)

II. Titterington's quit-claim to plaintiff was inoperative as a transfer, 1st. because Titterington had forfeited all claim by his abandonment; 2d. because the deed was not acknowledged before a justice; 3d. because plaintiff did not, when the deed was made, proceed to occupy the land.

The transfer of pre-emption rights was under the law (Sess. Acts, 1852, pp. 11–12, § 7; Sess. Acts 1858–9, p. 65, § 6) to be made for the sole purpose of residence for agricultural objects, and to be accompanied by change of possession, and not to be made for speculation; and without such transfer of occupancy, the transferee could obtain no title.    Here, Titterington himself had abandoned the possession, and plaintiff did not take it.

NAPTON, Judge, delivered the opinion of the court.

The petition in this case was in the nature of a bill in equity to procure a transfer of the title to certain lands described, from the defendant to the plaintiff.

The facts agreed on are, that one John Q. Titterington was the owner, by purchase from one Grammar, of a railroad pre-emption on the land in question, under the act of Congress entitled "An act granting the right of way to the State of Missouri, and a portion of the public lands, to aid in the

construction of certain railroads in said State," approved June 10, 1852, and the act of the General Assembly of this State, entitled "an act to accept the grant of lands made to the State of Missouri by the Congress of the United States, to aid in the construction of certain railroads in this State, and to apply a portion thereof to the Pacific Railroad, approved December 23, 1852." Titterington resided on this land from 1857, when he bought of Grammar, until February, 1862, when, owing to the commotions growing out of the war, he left the State, leaving his wife and family on the place, who continued to stay there till the fall or winter of 1863, when they also left, leaving a negro man in charge of the place; but how long the negro remained there is not stated. In the fall of 1865, the defendant purchased Titterington's interest in this land, under a sheriff's sale on execution against Titterington, took possession, and has ever since been in actual possession thereof, claiming the ownership. There were at the time of defendant's purchase about thirty-five acres of the land in cultivation and under fence, with double-log house, stable and small young orchard growing on the place, said improvements having been made by Titterington. Titterington never returned to said premises, nor demanded the possession thereof after his leaving as aforesaid, nor was ever in possession after said defendant took possession.

On the ―― day of July, 1870, said Titterington, who then resided in Laclede county, Mo., conveyed his title to said premises to the plaintiff, who was then and still is a practicing attorney, residing in Springfield, Greene county, Mo., and who has never been in possession of said premises.

These are all the facts agreed on. On the trial in 1874, it further appeared that Grammar's pre-emption under the act of 23d of December, 1852, was regularly proved up and filed in the clerk's office, as required by the 7th section of this act, on the 4th of June, 1854.

On the 4th of November, 1857, Grammar assigned to Titterington this pre-emption claim in consideration of thirty dollars, and this assignment was acknowledged before the clerk of the circuit court, and certified by said clerk.

On the 27th of July, 1870, the following deed was acknowledged before a notary public of Greene county, and filed in the office of the recorder of Lawrence county :

"Know all men by these presents, that John Q. Titterington, of the county of Laclede, in the State of Missouri, has this day, for and in consideration of one thousand dollars, in hand paid by Jerry C. Cravens, of the county of Greene, in the State of Missouri, the receipt whereof is hereby acknowledged, do by these presents remise, release, and forever quitclaim unto the said Jerry C. Cravens and to his heirs and assigns, the following described tract or parcels of land situate in the county of Lawrence, in the State of Missouri, that is to say : the north half of the northwest quarter, and the northeast quarter of the southwest quarter of section 26, T. 27, R. 25 ; also the south half of the northwest quarter of section 33, T. 27, R. 25 ; also the following described tract of land situate in the county of Stone, in the State aforesaid, viz : the south half of the southeast quarter of section 9, T. 26, R. 23. In testimony whereof, I have hereto subscribed my name and affixed my seal, this 27th of July, 1870.

[Seal.]          JOHN Q. TITTERINGTON."

The acknowledgment of this deed was made before T. H. Lawrence, notary public of the county of Greene, and is marked " filed and recorded by H. C. Lollar, recorder, August 15th, 1871."

This deed, it seems, was given in evidence on the trial by the plaintiff as the basis of his claim. The petition and answer are both in the bill of exceptions, which, in fact, is the only record in the case. It then appears from the bill of exceptions (there being no record of the case on which the bill of exceptions was taken), that the deputy clerk of Lawrence county was examined as a witness, and stated that in January or February, 1871, the defendant, Moore, came to his office and requested a copy of the original pre-emption papers, also a copy of the sheriff's deed for Titterington's interest in said lands, made under a judgment in favor of Lucas, Thompson & Co. ; that soon after, Moore returned with a deed from the railroad company to himself. The deed from

the sheriff recited a judgment in favor of Lucas, Thompson & Co. against Titterington for $289.50, an execution levied on the same in August, 1865, the sale and purchase by Moore for $223.00. The deed from the railroad company to Moore was then read, dated March 4th, 1871.

The judgment on which the execution issued under which Moore purchased was a judgment by default on an order of publication, without personal service or attachment. The plaintiff then proved that he attended in January, 1871, the place where the railroad company designated that applicants for deeds or pre-emptions should attend, and offered $200, the price of the land, etc., but was refused; also proof that the rental value of the place was $60 per annum. The defendant proved that he had put improvements on the place to the value of fifty dollars.

The judgment of the court was for the defendant, and after the usual motions for a re-hearing, etc., an appeal was taken to this court.

Although the record of the proceedings to the case of Lucas, Thompson & Co., against Titterington, was not, so far as the bill of exceptions in the case shows, produced at the trial, yet we may infer from the statements made, that the judgment and execution thereon against Titterington were nullities, and the sale to defendant, Moore, conveyed no title whatever. Indeed, had the judgment been valid, the same conclusion would have followed, since this court has recently, in accordance with previous opinions, decided that pre-emption rights could not be sold on execution. (Bray vs. Ragsdale, 53 Mo., 170.)

The defendant however took possession of this land in 1865, and five years thereafter being still in possession, procured a deed from the railroad company, and the plaintiff now asks a court of equity to transfer this legal title to him, as the assignee of the pre-emption claim. Assignments or transfers of pre-emption claims were first recognized and declared valid by the act of our legislature of March 5, 1859. That act provides: " All pre-emptions taken under this or any former law are hereby declared to be transferable; and the person

purchasing any of said pre-emptions shall have the same right to enter as the original pre-emptor had, by first obtaining in writing all the right of the pre-emptor acknowledged before a justice of the peace, and duly certified by the clerk of the circuit court in the county where the said land lies."

The transfer relied on by the plaintiff was acknowledged before a notary public of Greene county, whilst the land upon which pre-emption existed was in Lawrence county.

A notary public was by our statute, and is still authorized, to "Take and certify relinquishments of dower and conveyances of separate estates of married women, the proof or acknowledgment of deeds, conveyances, powers of attorney, and other instruments of writing, in like cases and in the same manner, and with like effect as clerks of courts of record are authorized by law."

Now it will be perceived that the act of 1859, which authorized these transfers, did not authorize their acknowledgment before a clerk of any court of record, but required the acknowledgment to be made before a justice of the peace of the county where the land was, and then such acknowledgment to be certified by the clerk of the circuit court. There was then no authority given to notaries public, either in the general statute defining the powers of notaries, or in the special enactment prescribing the proof of transfer of pre-emptions. The distinction seems technical but there may have been good reason for not giving this power to notaries, and especially to notaries in another county. The provision was doubtless intended to promote the convenience of pre-emptors and to enable the railroad company very easily to determine what proof should govern them in a controversy between the original pre-emptor and his assignee. It was doubtless supposed that when a pre-emptor parted with his right to a pre-emption, he would at the same time transfer the possession to his assignee, and it would of course, be more convenient for all parties to have a well-known officer located in every township of a county, designated as the one to witness the transfer.

True, circumstances occurred two or three years after the passage of the law, which might have made the restriction inconvenient. Many citizens, pre-emptors and other land holders, were compelled by the disturbed condition of the country in 1861, and for four years following. to leave their places of abode and go to other counties, and perhaps to other States, and such it appears was the case here; but there was nothing to hinder the plaintiff in 1870, from procuring the required acknowledgment from Titterington, who then lived in an adjoining county, and whose acknowledgment was not taken either in the county where he resided, or in the county where the land was situate. Moreover, this is a suit in equity. The defendant, Moore, had in good faith bought this preemption claim under execution, and paid $223 for it, had taken immediate possession and continued in possession for five years and paid $200 to the railroad company for his title, and expended $50 in improvements. He manifestly has the legal title, whatever defects may have existed in the preliminary steps he took to acquire it.

We cannot say that Titterington's absence from the land for eight years was in law an abandonment, although his failure to put up any claim to it for the last five years of his absence has a tendency to create that impression. All this however, might have been explained; and the explanation may doubtless be found in the supposition that he as well as Moore was under the impression that the sale under the execution carried the title. But as Moore obtained the title in good faith, and expended altogether $473 in its procurement, a court of equity would certainly not interfere with it on the statement of the bill filed in this case. No proffer is made to pay even the purchase money expended by Moore, and certainly no court would interfere until this was done.

In short, as the defendant had the legal title, and his equities are not counteracted by any offers on the part of the plaintiff in his bill, and the plaintiff's purchase of Titterington's equity (if a preference in the purchase of land can be termed any title or estate at all) was not in conformity to the

statute, we see no reason to depart from the conclusion of the circuit court dismissing the bill.

Judgment affirmed. The other judges concur.